35446.   AMERICAN CYANAMID COMPANY *v.*
SAWAN, INC.

Decided February 23, 1955—Rehearing denied March 25, 1955.

*Dunaway & Embry, James M. Embry,* for plaintiff in error.
*Wm. F. Buchanan, Newell Edenfield,* contra.

FELTON, C. J.   The evidence shows that the defendant's product was purchased by the plaintiff's then president and general manager, Mr. Tidwell.   He testified that he approved the purchase as he did all purchases.   His testimony further shows that he relied solely on the statements made in plaintiff's Exhibit 2. He did not rely on anything Brannon said to him, or on anything Brannon said to Doby or on anything Doby may have said to him.   Any sales or promotional literature such as blotters, etc., which Brannon may have given to Doby in no way caused Tidwell to make the purchase.   Since Tidwell and not Doby made the purchase, we must look to what induced Tidwell to make

the purchase. Doby testified that the blotters and other sales literature other than the Advance Bulletin were received after the purchase of the Acrylon and that the statements made by Brannon that the Acrylon was "absolutely safe" and was "fool-proof" were made after the unsuccessful attempt to use the Acrylon under tarpaulin and at the time when Doby and Brannon were discussing the building of an atmospheric chamber. Since Tidwell's testimony and the other testimony showed that Tidwell relied solely on the Advance Bulletin, plaintiff's Exhibit 2, it is to that bulletin that we must look to see if the defendant made an express warranty and whether there was a breach of such warranty should it be found that one was made.

If the statements contained in the Advance Bulletin amount to a warranty, the warranty was a limited one. The bulletin stated: "Laboratory tests have shown that *Acrylon does not affect germination at recommended dosages;* experimental and field work have demonstrated its effectiveness, safety, and ease of use. *While some work in certain phases of application must still be undertaken,* the following recommendations can be made for the control of infestations in seed with Acrylon. . . but as yet the use of Acrylon in large atmospheric fumigation chambers, ranging from 1,000 cu. ft. capacity up, has been limited. Before making any general recommendations as to dosage, exposure, and methods of application to be used under heavy load conditions, additional data must be secured. . . Details and specifications for the construction and operation of atmospheric chambers will be supplied on request, and recommendations for treating any particular seed will also be furnished on request." (Italics supplied.)

The plaintiff built and used an atmospheric chamber measuring 1,449 cubic feet. Clearly, anything in the Advance Bulletin which might be considered a warranty that Acrylon would not affect germination in seed was expressly limited to fumigation in chambers of 1,000 cubic feet or less. The defendant stated in its Advance Bulletin that it was not making any "general recommendations" about the use of Acrylon in atmospheric chambers ranging from 1,000 cubic feet capacity up because the use of Acrylon in such chambers had been limited. The defendant, for this reason, or for other good reasons, or for no reason at all, had the right to limit its warranty.

The plaintiff relies strongly on the dealings between Doby and Brannon. As shown above, these dealings in no way affected the purchase of the product by Tidwell. Doby and Brannon first tried and used the Acrylon under tarpaulins, but that was unsuccessful. It was after this attempt that Doby testified Brannon suggested an atmospheric chamber. Doby also testified that not only did Brannon suggest the chamber, but that he saw it after it was completed, could or should have known it exceeded 1,000 cubic feet, and said he thought it was a good chamber. This was not in response to any requests made to the defendant in accordance with the provisions of the Advance Bulletin, because Doby testified that no further data or information was requested of the plaintiff. The use of Acrylon under the tarpaulins and the construction of the chamber happened after Tidwell had purchased the Acrylon. Generally, representations or statements which are made after a sale and which did not induce it, do not amount to a warranty, unless there is some new consideration to support it. *Baldwin* v. *Daniel*, 69 *Ga.* 782 (4); *Brooks* v. *Matthews*, 78 *Ga.* 739 (2) (3 S. E. 627). There is no evidence of any consideration to support a new warranty, nor is there any evidence to authorize a finding that Brannon was authorized to make a warranty contrary to the alleged express warranty relied on.

The fact that, after the defendant was notified of the loss, a chemist hired by the defendant inspected the chamber and did not criticize or comment on it does not alter the situation. The chemist was under no duty to speak, and the fact that he made no comment does not operate adversely to the defendant's interest.

What has been said above applies equally to a second fumigation as it does to a first.

It is contended by the defendant in error that the evidence does not show that Tidwell, who was president and general manager of Sawan at the time of the purchase of the Acrylon, had to approve all purchases made by Sawan. Tidwell testified: "I approved the purchase, which I do of everything that is bought by our organization." In view of Tidwell's universal practice of approving every purchase made by Sawan, and in the absence of evidence to the contrary, the purchase of the

Acrylon could not have been made without Tidwell's approval; therefore, Tidwell and not Doby was the "purchaser" within the meaning of the word as applied to this case, and all that Doby did was to submit an "order" or recommendation for Tidwell's approval or disapproval. It was Tidwell's approval that gave the order life.

The evidence did not authorize a finding that the defendant had breached an express warranty.

The court erred in denying the motion for a new trial.

*Judgment reversed. Quillian and Nichols, JJ., concur.*